Andrew M. Federhar  (No. 006567)
Jessica A. Gale (No. 030583)
**SPENCER FANE LLP**
2415 E. Camelback Road, Suite 600
Phoenix, AZ  85016
Tel.: (602) 333-5430
Fax: (602) 333-5431
afederhar@spencerfane.com
jgale@spencerfane.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| C. R. Bard, Inc., | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | **Ct. I: Breach of Contract – License Agreement;** |
| Atrium Medical Corp., | **Ct. II: Breach of Contract – Settlement Agreement;** |
| Defendant. | **Ct. III: Declaratory Judgment** |
| | **Ct. IV: Specific Performance** |

Plaintiff C.R. Bard, Inc. for its Complaint against Atrium Medical Corporation states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. C.R. Bard, Inc. ("Bard") is New Jersey corporation with its principal place of business in Franklin Lakes, New Jersey. Bard Peripheral Vascular is a wholly owned subsidiary of Bard.

2. Atrium Medical Corporation ("Atrium") is a Delaware corporation with its principal place of business in Hudson, New Hampshire.

3. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant, and as set forth herein, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. This Court has personal jurisdiction over Atrium pursuant to the mandatory

07680-00015/12532305.1

and exclusive forum selection clauses in the Settlement Agreement and License Agreement.

5.     Venue is appropriate in this Court pursuant to the mandatory and exclusive forum selection clauses in the Settlement Agreement and License Agreement.

## FACTUAL BACKGROUND

6.     Bard, through its wholly-owned subsidiary Bard Peripheral Vascular, Inc., is the owner of U.S. Patent No. 6,436,135 (the "'135 Patent"). The '135 Patent was one of the most important medical discoveries of the 20th Century. The '135 Patent involves the use of expanded polytetrafluoroethylene (ePTFE) in a wide variety of products both vascular and non-vascular in humans.

7.     On August 20, 2002, the United States Patent and Trademark Office duly and legally issued the '135 Patent to Bard.

8.     On January 2, 2007, the Canadian Intellectual Property Office issued patent CA1341519 (the "Canadian Patent") based on the '135 Patent. A true and correct copy of the Canadian Patent is attached as **Exhibit 1.** Bard owns the Canadian Patent and all substantive rights in and to the Canadian Patent.

9.     In 2010, Bard, through its wholly-owned subsidiary Bard Peripheral Vascular, filed a lawsuit in the United States District Court, for the District of Arizona against Atrium and others alleging, among other claims, wrongful infringement of the Patent. *See Bard Peripheral Vascular, Inc. v. Atrium Medical Corporation*, et al., Case No. 2:10-cv-01694-DGC.

10.     In *Bard v. Atrium*, Bard alleged that Atrium directly infringed claims 21, 22 and 24 of the Patent and had encouraged others to infringe the Patent.

11.     Before Atrium answered, Bard and Atrium reached a settlement, entered an agreement (the "Settlement Agreement"), and Bard dismissed Atrium from the case.

12.     Pursuant to the Settlement Agreement, Bard issued a License to Atrium.

13.     Pursuant to the terms of both the License Agreement and the Settlement Agreement, Bard and Atrium have agreed that the United States District Court for the District of Arizona is the proper forum for any dispute arising thereunder, and that the laws

2

of the State of Delaware will govern any such dispute.

14.    Pursuant to the terms of the Settlement Agreement, and in consideration of the License Agreement, Bard agreed to release all of its claims against Atrium related to their dispute over Atrium's alleged infringement of the '135 Patent.

15.    The License Agreement included the '135 Patent and "all other patents of [Bard] issued anywhere in the world that rely on the Patent for priority…and any subsequent filings in any country or other jurisdiction claiming priority therefrom." The Canadian Patent is licensed pursuant to the License Agreement and is within the definition of "Licensed Patents" under the License Agreement.

16.    The License Agreement is a "worldwide, nonexclusive, royalty-bearing license…for the life of such Licensed Patents."

17.    In the License Agreement, Atrium agreed to make royalty payments to Bard. Pursuant to § 3.1, Atrium pays a royalty of fifteen percent (15%) of all Net Sales on Licensed Products as those terms are defined in the License Agreement. However, pursuant to § 3.2, in the event that royalties for any calendar quarter of the term of the License Agreement are less than Three Million Seven Hundred Thousand U.S. dollars ($3,750,000), Atrium agreed to pay that amount as Minimum Royalties during the term of the License Agreement ("Minimum Royalties").

18.    Minimum Royalties are not calculated based solely on the sale of Licensed Products in the United States or solely related to the '135 Patent.

19.    Minimum Royalties are due and owing if the sale by Atrium of Licensed Products worldwide does not generate royalties equal to or greater than the Minimum Royalties.

20.    While there are certain limitations on the obligation of Atrium to pay Minimum Royalties detailed in the License Agreement, none are relevant to this dispute. For example, if the United States Food and Drug Administration approves a Non-Vascular Product as defined in the License Agreement with a vascular indication, then the Minimum Royalties requirement shall no longer apply.  Alternatively, if the FDA rescinds it approval

3

to market or sell Non-Vascular Products as defined in the License Agreement for previously approved indications, the Minimum Royalties are no longer owed.  Neither of these eventualities listed in § 3.2 (a) or (b) of the License Agreement have occurred.

21.     The Term of the License Agreement is from its Effective Date until "the last to expire of all of the patents included with the Licensed Patents" covered by the License Agreement, unless otherwise terminated earlier. *See* License Agreement at § 7.1.

22.     The last patent to expire under the definition of Licensed Patents is the Canadian Patent, which is due to expire on January 2, 2024.

23.     On August 20, 2019, the '135 Patent in the United States expired. When that happened, Atrium refused to pay the Minimum Royalties and instead paid only 15% of Net Sales on Licensed Products in Canada, instead of the required minimum of $3,750,000 per calendar quarter.

24.     Instead of paying Bard $3,750,000 in October of 2019, Atrium instead paid $2,078,804.  In January of 2020, Atrium paid only $139,391. In April of 2020, Atrium paid only $132,149. In July of 2020, Atrium paid only $105,070. In October of 2020, Atrium paid only $138,400. On January 19, 2021, Atrium paid only $139,015.34.

25.     Atrium's failure to pay the Minimum Royalties in 2019 and 2020 constitutes a breach of the Settlement Agreement and the License Agreement.

26.     As of January 1, 2021, Atrium has failed to pay Minimum Royalties in the amount of Fourteen Million Four Hundred Eighty-four Thousand Three Hundred Seventy-four U.S. Dollars and Sixty-Six cents ($14,484,374.66), plus, pursuant to § 3.3 of the License Agreement, interest accruing at 2% in excess of the Prime Rate published by the Wall Street Journal at the time the payment was due and for the time period until payment is received by Bard.

27.      Bard has demanded that Atrium continue paying the Minimum Royalties under the License Agreement, but Atrium has refused.

28.     As a result of Atrium's refusal to pay the Minimum Royalties, Bard has been damaged in an amount not less than Fourteen Million Four Hundred Eighty-four Thousand

PH 559383.2

Three Hundred Seventy-four U.S. Dollars and Sixty-Six cents ($14,484,374.66), plus interest as described above, and  damages will continue to accrue into the future if Atrium does not pay the Minimum Royalties when due.

29.     The parties have a dispute about the meaning of the terms of the License Agreement and its enforceability.

30.     The License Agreement was entered into, *inter alia*, as consideration for settlement of Atrium's alleged infringement of the '135 Patent and as a convenience to the issuance of individual licenses in multiple countries and thus is for a worldwide license. The term of the License Agreement continues until the last of the Licensed Patents, which includes the Canadian Patent, expire which will be January 2, 2024.

31.     Atrium instead contends that it only has to pay royalties based on 15% of the Net Sales of Licensed Products in Canada pursuant to the Canadian Patent.

### COUNT I: BREACH OF CONTRACT – LICENSE AGREEMENT

32.      Bard incorporates the allegations found in paragraphs 1-31 as if fully stated herein.

33.     The License Agreement constitutes a valid and enforceable agreement between Bard and Atrium.

34.     Atrium is in breach of its obligations in the License Agreement.  Specifically, Atrium has failed to make the Minimum Royalty payment and has indicated that it is repudiating its obligation to make that payment in the future.

35.     Bard has been damaged by that breach, and will continue to be damaged in the future by Atrium's repudiation of its on-going obligation to make Minimum Royalty payments during the remaining term of the License.

36.     Bard is entitled to judgment in its favor for damages as set forth herein and an amount to be proven at trial.

### COUNT II: BREACH OF CONTRACT - SETTLEMENT AGREEMENT

37.     Bard incorporates the allegations found in paragraphs 1-36 as if fully stated herein.

PH 559383.2

38.     In 2011, Bard filed a lawsuit against Atrium alleging infringement of the '135 Patent.

39.     Rather than answer and defend against the alleged infringement, Atrium entered into a Settlement Agreement wherein it agreed to pay certain royalties for a worldwide license of the '135 Patent technology and all related patents issued worldwide, from Bard.

40.     The Settlement Agreement constitutes a valid and enforceable agreement between Bard and Atrium.

41.     The License Agreement included a worldwide license and its term extended to the expiration of the Canadian Patent.

42.     It is undisputed that for almost ten (10) years, Atrium paid Minimum Royalties to Bard pursuant to the terms of the License Agreement and the Settlement Agreement.

43.     By refusing to pay Minimum Royalties under the terms of the Settlement Agreement and the License Agreement entered pursuant thereto, Atrium has denied Bard the benefit of the bargain of the Settlement Agreement and the License Agreement and is in breach of both Agreements.

44.     As a result, Bard is entitled to damages representing the benefit of the bargain with Atrium and the damages resulting from Atrium's breach in an amount to be proven at trial.

## COUNT III: DECLARATORY RELIEF – DELAWARE AND FEDERAL DECLARATORY JUDGMENT ACTS

45.     Bard incorporates the allegations found in paragraphs 1-44 as if fully stated herein.

46.     The Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*, gives this Court jurisdiction to determine a controversy about whether a patent licensee is in breach of a license agreement. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 121 (2007).

47.     As set forth above, there is a dispute between the parties about whether the

6

1   Minimum Royalties established in the License Agreement is enforceable.

2         48.    Bard is entitled to a declaration of its rights and other legal remedies under

3   the Settlement Agreement and the License Agreement.

4         49.    This Court has supplemental jurisdiction to declare the rights of the parties

5   under the Delaware Declaratory Judgment Act, 10 Del. C. § 6501 because the state law

6   claim arises from the same common nucleus of operative facts as the federal law claims. 28

7   U.S.C. § 1367(a).

8                   **COUNT IV: SPECIFIC PERFORMANCE**

9         50.    Bard incorporates the allegations found in paragraphs 1-49 as if fully stated

10  herein.

11        51.    Bard is entitled to specific performance of both the License Agreement and

12  the Settlement Agreement because each of these Agreements constitute a valid and

13  enforceable contract between the parties.

14        52.    Bard is entitled to specific performance of both of the Agreements because

15  Bard is not in breach of either Agreement and Atrium is by virtue of its failure to pay the

16  Minimum Royalties.

17        53.    Without an order of specific performance Bard will not have an adequate

18  remedy at law to prevent future breaches of the Agreements.

19        54.    Bard is ready, willing and able to perform its obligations under the terms of

20  each of the Agreements.

21        55.    Because Atrium is in breach of each of the Agreements, the balance of

22  equities tips sharply in favor of Bard with regard to the grant of an order of specific

23  performance.

24        56.    The grant of a license to Atrium gives Atrium a unique right, without which

25  it would be committing patent infringement.

26        57.    Without an order of specific performance, Bard cannot prevent future

27  infringement of its right to receive fair compensation for the licensing of its unique patent

28  rights to Atrium.

PH 559383.2

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff C.R. Bard, Inc. respectfully asks this Court to enter judgment in its favor and against Defendant Atrium Medical Corporation as follows:

1.     For damages in an amount proven at trial to compensate Bard for Atrium's breach of the Settlement Agreement;

2.     For damages in an amount to proven at trial to compensate Bard for Atrium's breach of the License Agreement;

3.     For damages in an amount to be proven at trial to compensate Bard for Atrium's breach which denied Bard the benefit of its bargain with Atrium of the Settlement Agreement and the License Agreement;

4.     For a declaration of Bard's right to continue to receive Minimum Royalties until the expiration of the term of the License Agreement;

5.     For an order requiring Atrium to specifically perform its obligations under the Settlement Agreement and the License Agreement; and

6.     For such other and further relief as the Court deems necessary, including Bard's costs and attorneys' fees.

DATED this 16th day of February, 2021.

SPENCER FANE LLP


*s/ Andrew M. Federhar*
Andrew M. Federhar
Jessica A. Gale
Attorneys for Plaintiff

8

PH 559383.2