**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| C. R. Bard, Inc.,<br><br>    Plaintiff,<br><br>v.<br><br>Atrium Medical Corporation,<br><br>    Defendant. | No. CV-21-00284-PHX-DGC<br><br>**ORDER** |

Defendant Atrium Medical Corporation has moved to dismiss Plaintiff C. R. Bard, Inc.'s complaint. Doc. 20; *see* Doc. 1. Plaintiff seeks leave to amend its complaint. Doc. 30. The motions are fully briefed (Docs. 25, 26, 31, 34), and oral argument will not aid the Court's decision. *See* LRCiv 7.2(f). For reasons stated below, the Court will deny the motion to dismiss and grant in part and deny in part the motion to amend.

**I.   Background.**

In 2010, Plaintiff, through its wholly owned subsidiary Bard Peripheral Vascular, filed suit against Defendant alleging infringement of U.S. Patent 6,435,135 (the "'135 Patent"). Before Defendant answered the suit, Plaintiff and Defendant entered into a settlement agreement (the "Settlement Agreement") and, pursuant to the Settlement Agreement, a licensing agreement (the "Licensing Agreement"). The Settlement Agreement and Licensing Agreement (collectively, the "Agreements") form the basis for this litigation.

Under the Agreements, Plaintiff agreed to drop the infringement suit and grant Defendant a license to the '135 Patent as well as all other patents claiming priority to the '135 Patent, including Canadian Patent 1,341,519 (the "Canadian Patent"). *See* Doc. 20-2 § 2.1. In return, Defendant agreed to pay royalties to Plaintiff in an amount equal to the greater of either 15% of net sales of licensed products or $3.75 million quarterly (the "Minimum Royalty Provision"). *Id.* § 3.2. The Agreements also included provisions under which Defendant was barred from filing or cooperating in any challenge to the validity or enforceability of the patents covered by the Agreements (the "No-Contest Provision") (*id.* § 2.4), and under which any disputes arising under the Agreements would be brought in this Court (the "Forum Selection Provision")(*id.* § 8.5). The terms of the Agreements extended to January 2, 2024 – the date on which the Canadian Patent expires – but could be cut short in certain situations. *See id.* §§ 7.1, 7.2.

On August 20, 2019, the '135 Patent expired. Thereafter, Defendant made royalty payments to Plaintiff totaling 15% of its net Canadian profits at amounts significantly lower than the $3.75 million under the Minimum Royalty Provision of the Agreements.[1]

Plaintiff subsequently filed this action, alleging state law claims for breach of contract and seeking a declaratory judgment and specific performance of the Minimum Royalty Provision. Defendant moved to dismiss under Rule 12(b)(6), arguing that to require the $3.75 million minimum quarterly royalty after the expiration of the '135 Patent would run afoul of the patent misuse doctrine of *Brulotte v. Thys Company*, 379 U.S. 29 (1964), which prohibits collecting royalties on an expired patent. *See* Doc. 20.

After briefing on Defendant's motion to dismiss was complete, Plaintiff filed a motion for leave to amend under Rule 15, seeking to add factual allegations to its complaint along with eight new claims. Two new claims arise from the same Minimum Royalty

---

[1] According to the proposed amended complaint, for the quarter during which the '135 Patent was still partially valid, Defendant paid Plaintiff $2,078,084. For the subsequent quarters, during which the '135 Patent was never valid, Defendant paid Plaintiff $139,391, $132,149, $105,070, $138,399.73, $139,015.34, $91,029.74, and $97,467.09, for a grand total of $2,921,145.90. Doc. 30-1 ¶ 25. Had the Minimum Royalty Amount been paid quarterly over the same time period, Defendant would have paid Plaintiff $30 million, $27,078,854.10 more than it has paid. The proposed amended complaint alleges only a $27,078,676.10 deficiency, $178 less than the alleged shortfall. *See id.* ¶ 27.

Provision dispute and assert alternative equitable theories of liability for Defendant's failure to pay the Minimum Royalties Provision amount. Doc. 30-1 ¶¶ 107-111, 136-140 (Counts VIII and XII). The other new claims relate to Defendant's actions after the filing of the original complaint in seeking review of the Canadian Patent with the Canadian Intellectual Property Office ("CIPO") and in filing petitions for inter partes review ("IPR") against three unrelated U.S patents held by Plaintiff's wholly owned subsidiary. Plaintiff seeks leave to add claims alleging that the petition for review of the Canadian Patent breaches the No-Contest and Forum Selection Provisions of the Agreements and constitutes abuse of process. *Id.* ¶¶ 56-66, 85-93, 112-121 (Counts II, III, V, and IX). Plaintiff also seeks leave to add claims alleging that the IPR petitions breach an implied duty of good faith and fair dealing in the Licensing Agreement and constitute abuse of process. *Id.* ¶¶ 121-135 (Counts X and XI). Defendant opposes the motion in its entirety. *See* Doc. 31.

**II.  Leave to Amend.**

The Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This mandate must be applied with "extreme liberality," *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001), and leave should be granted in the absence of reasons such as undue delay, bad faith on the part of the movant, undue prejudice to the opposing party, or futility of amendment, *Foman v. Davis*, 371 U.S. 178, 182 (1962). Amending a claim is futile if the amended claim would be immediately subject to dismissal. *Nordyke v. King*, 644 F.3d 776, 778 n.2 (9th Cir. 2011). The standard for futility is the same as the standard for dismissal under Rule 12(b)(6) – whether the claim is plausible on its face. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**A. Minimum Royalty Provision: Amended Counts I, IV, VI, VII, VIII, and XII.**

Amended Counts I, IV, VI, and VII have been carried forward from Plaintiff's original complaint (Counts I-IV) and are the subject of Defendant's motion to dismiss. *See* Doc. 20. The Court will deny Defendant's motion to dismiss and grant leave to include these claims in the amended complaint.

These counts are based on Defendant's alleged breach of its contractual obligation to pay Plaintiff the amount specified in the Minimum Royalties Provision of the Settlement Agreement and License Agreement. Doc 30-1 ¶¶51-55, 77-84. The Agreements state that disputes will be resolved under Delaware law. Doc. 20-2 § 8.5. The elements of breach of contract in Delaware are (1) a contractual obligation, (2) a breach by the defendant, and (3) resulting damages. *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

Plaintiff alleges that there was a contractual obligation for Defendant to make quarterly payments of 15% of net profits from sales of products licensed under the Agreements or $3.75 million under the Minimum Royalties Provision. Doc. 30-1 ¶¶ 17, 52, 81; *see also* Doc. 20-2 §§ 3.1, 3.2. Plaintiff alleges that Defendant breached that obligation by refusing to pay the Minimum Royalties Provision amount. Doc. 30-1 ¶¶ 25-27, 55, 83. And Plaintiff alleges that it has been damaged by Defendant's breach. *Id.* ¶¶ 29, 54, 84. Plaintiff pleads all elements of a breach of contract claim.

Defendant's motion to dismiss does not dispute this fact, but instead asserts that the Minimum Payment Provision is invalid under the patent misuse doctrine recognized in *Brulotte v. Thys*, 379 U.S. 29 (1964), because it unlawfully exacts royalties on an expired U.S. patent. Doc. 31 at 5. The Court has reviewed the key cases cited by the parties, particularly the three circuit cases on which Defendant bases the motion to dismiss, and concludes that it must resolve this issue on a more complete factual record.

Defendant places particular reliance on *Zila, Inc. v. Tinnell*, 502 F.3d 1014 (9th Cir. 2007), but that case was decided on a summary judgment record. *Id.* at 1018. The Ninth Circuit focused on evidence regarding the terms of the royalty provision before it, noting that "[d]etermining the reach of *Brulotte*'s barrier to the collection of royalties requires us to consider the scope of the royalty provision[.]" *Id.* at 1025. "In other words, we have to ask both what Zila is paying royalties for and under what conditions its obligation do so is lawful." *Id.*; *see also id.* at 1017 (citing testimony about the intent of the agreement); *id.* at 1025 (court must engage in a "nuanced consideration of the contract"). Although the

parties provide some discussion of the royalty provision at issue in this case, the Court does not find it sufficient to determine the meaning of provision with confidence, particularly in light of the fine line-drawing engaged in by cases attempting to apply *Brulotte*.

Defendant argues that *Scheiber v. Dolby Labs. Inc.*, 293 F.3d 1014 (7th Cir. 2002), is directly on point, but that case not only was decided on a summary judgment record, it contains virtually no discussion of the issues addressed by the parties. In fact, Defendant cites to the district court's unpublished summary judgment ruling for a discussion of the issues raised by its motion. Doc. 22 at 12. Defendant also relies on *Meehan v. PPG Indus., Inc.*, 802 F.2d 881 (7th Cir. 1986), but that too was a summary judgment case and included a factual finding that "the plaintiff used his right to obtain a patent to project his monopoly power beyond the patent period[.]" *Id.* at 886.

As Plaintiff notes, other cases have reached conclusions different than those in *Zila*, *Scheiber*, and *Meehan*. *See Nautilis, Inc. v. Icon health & Fitness, Inc.*, 304 F.Supp.3d 552 (W.D. Tex. 2018); *Hearing Components, Inc. v. Shure, Inc.*, 2009 WL 815526 (E.D. Tex. 2009). Defendant argues that these cases are simply wrong, particularly in this circuit under *Zila*, but these cases were also resolved on a more complete record than the Court has here – *Nautilis* on cross-motions for summary judgment and *Hearing Components* after a bench trial.

The Court finds the *Brulotte* doctrine to be complex and riddled with exceptions. In fact, the Supreme Court itself has noted that "parties can often find ways around *Brulotte*, enabling them to achieve those same ends." *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 453 (2015). Plaintiff has properly pleaded breach of contract claims, and the Court cannot conclude on this record that Defendant prevails as a matter of law. The Court accordingly will deny the motion to dismiss, grant to the motion for leave to amend, and address the *Brulotte* issue on a more complete record at summary judgment.

Plaintiff also seeks leave to add new Counts VIII and XII, which are equitable remedies pled in the alternative to the Counts alleging breach of the Minimum Royalty Provision. Count VIII relies on a promissory estoppel theory and Count XII on a quantum

meruit theory. Defendant contends that these claims are untimely and prejudicial, asserting that it has been required to engage in additional motion practice to oppose them. Doc. 31 at 12. The Court cannot conclude that Plaintiff's five-month delay in seeking leave to amend is grounds for denying amendment. This Circuit has made clear that "'undue delay by itself is insufficient to justify denying a motion to amend.'" *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712-13 (9th Cir. 2001) (quoting *Bowles v. Reade*, 198 F.3d 757, 758 (9th Cir. 1999)). And typically, courts will find prejudice only when an amendment unfairly affects a defendant's ability to prepare a defense to the amendment. *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009). Amendment at this pre-discovery stage of the litigation will not impair Defendant's ability to mount of full defense to the new claims. The Court will grant Plaintiff leave to amend its complaint to add these alternative claims.

**B. Patent Reexamination Disputes: Amended Counts II, III, V, IX, X, and XI.**

Plaintiff seeks to add six new claims to its complaint that arise out of developments occurring after the start of this case. The Court will grant Plaintiff leave to amend its complaint to add Counts II, III, and V, and deny leave to add Counts IX, X, and XI.

After Plaintiff filed this case, the parties began settlement negotiations. Defendant indicated that, "[a]bsent . . . a meaningful offer to negotiate," it would file a petition for reexamination of the Canadian Patent with CIPO and would file petitions for IPR with the USPTO against three patents unrelated to this litigation. Doc. 30-4, at 3. Plaintiff seeks leave to add several claims regarding these petitions.

**1. Count II.**

Proposed Count II alleges breach of the License Agreement's No-Contest Provision arising from Defendant's filing of a petition for reexamination of the Canadian Patent. As set out above, breach of contract under Delaware law requires a contractual obligation, the defendant's breach, and resulting damage to the plaintiff. *See VLIW Tech.*, 840 A.2d at 612. Plaintiff alleges that the License Agreement includes the No-Contest Provision, under which Defendant agreed not to file or cooperate with any challenge to the validity or

enforceability of any patents covered by the License Agreement. Doc. 30-1 ¶ 59; *see also* Doc. 20-2 § 2.4. Plaintiff also alleges that Defendant filed a petition for reexamination of the Canadian Patent with CIPO. Doc. 30-1 ¶ 61. Finally, Plaintiff alleges that, as a result of the breach, the Canadian Patent's perceived value has been impacted. *Id.* ¶ 63.

Defendant argues that the No-Contest Provision is not enforceable under *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362 (Fed. Cir. 2001),[2] because the litigation underlying the Settlement and Licensing Agreements did not proceed to discovery on validity issues. Doc. 31 at 8-9. It is true that the 2010 litigation between Bard and Atrium terminated before Atrium filed an answer or the parties conducted discovery. But the Federal Circuit has declined to apply *Flex-Foot* to create a bright-line rule that no-contest provisions in settlement agreements entered before discovery are *per se* invalid. *See Baseload Energy, Inc. v. Roberts*, 619 F.3d 1357, 1363 (Fed. Cir. 2010) ("[W]hile the absence of a prior dispute and litigation as to invalidity is pertinent, we do not think that a settlement agreement is ineffective to release invalidity claims unless the exact circumstances described in *Flex-Foot* are present . . . . clear and unambiguous language barring the right to challenge patent validity in future infringement actions is sufficient, even if invalidity claims had not been previously at issue and had not been actually litigated.").

Defendant cites no cases providing that a plaintiff pleading a breach of contract claim must plead around all enforceability defenses, but Plaintiff's amended complaint does in fact address these considerations. Plaintiff pleads that Defendant agreed "not to file or cooperate in any action that challenges the validity, enforceability, or patentability of the Licensed Patents." Doc. 30-1 ¶ 59. Plaintiff pleads that the Canadian Patent is a "Licensed Patent" under the Agreements. *Id.* Plaintiff also pleads that the Non-Contest Provision's language is clear and unambiguous. *Id.* Accepting these allegations as true and giving Plaintiff the benefit of all favorable inferences, as it must at this stage of the litigation, the Court cannot conclude that Plaintiff fails to plead a plausible claim for breach

---

[2] The enforceability of a waiver of validity challenges to a patent is intimately related with the substance of enforcement of a patent right and thus governed by Federal Circuit law. *Flex-Foot*, 238 F.3d at 1365. The parties do not contest this in their briefing.

of contract. Plaintiff will be granted leave to add Count II to its complaint. *See* Doc. 30 at 4-5.

### 2. Counts III and V.

Proposed Counts III and V allege that, by filing a petition for reexamination of the Canadian Patent, Defendant breached the Settlement Agreement and the License Agreement's Forum Selection Provision. Doc. 30-1 ¶¶ 67-76, 85-93.

Plaintiff sets out the elements for breach of the Forum Selection Provision. Plaintiff alleges that Defendant agreed, in the Agreements, that "any action brought between the Parties arising under this Agreement . . . will be in the U.S. District of Arizona." Doc. 30-1 ¶¶ 70, 88; *see also* Doc. 20-2 § 8.5. Plaintiff alleges that Defendant, by filing a petition for reexamination of the Canadian Patent with CIPO, breached this provision. Doc. 30-1 ¶¶ 72, 90. And Plaintiff alleges that it has been damaged by the potential that it will lose its Canadian Patent. *Id.* ¶¶ 74, 93.

Defendant argues that the Forum Selection Provision is not applicable to its petition for reexamination with CIPO for three reasons: (1) the petition is not "between the parties" because the patent holder of the Canadian Patent is Plaintiff's wholly owned subsidiary, rather than Plaintiff itself (Doc 31 at 10); (2) the petition is not "between the parties" because it was filed directly with CIPO without joining even Plaintiff's wholly owned subsidiary (*id.*); and (3) Defendant cannot be required to bring the challenge to the Canadian Patent before this Court because the Court would not have power to adjudicate the validity of the Canadian Patent (*id.* at 10-11). The Court is unpersuaded by these arguments at this point in the litigation.

Plaintiff has made a sufficient showing at this juncture that the reexamination petition regarding the Canadian Patent is "between the parties." Courts in the Ninth Circuit have held that parent companies with direct pecuniary interests in their subsidiary's patents have standing to assert the subsidiary's claims. *See, e.g.*, *Biosite, Inc. v. XOMA Ltd.*, 168 F. Supp. 2d 1161, 1166 (N.D. Cal. 2001). Courts have also held that equivalent proceedings before the USPTO were subject to a similar forum selection clause. *See, e.g.*,

*Dodocase VR, Inc. v. MerchSource LLC*, No. 17-CV-07088-EDL, 2018 WL 1475289, at *7 (N.D. Cal. Mar. 26, 2018), *aff'd and remanded*, 767 F. App'x 930 (Fed. Cir. 2019).

Moreover, it is not clear, as Defendant argues, that the Court would not have jurisdiction to determine the validity of the Canadian Patent were the matter brought before it. The Federal Circuit has made clear that "it is almost always an abuse of discretion [for a court] to use . . . *supplemental* power to deal with infringement claims involving foreign patents." *Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.*, 589 F. Supp. 2d 84, 91 (D. Me. 2008) (citing *Voda v. Cordis Corp.*, 476 F.3d 887 (Fed. Cir. 2007) (emphasis added). Such a claim before this Court, however, would be heard by way of diversity jurisdiction which, in contrast to supplemental jurisdiction, is ordinarily not discretionary and was specifically excepted from the Federal Circuit's holding in *Voda*. *See id.* at 91-92. Defendant's reliance on *Mars Inc. v. Kabuskiki-Kaisha Nippon Conlux*, 24 F.3d 1368 (Fed. Cir. 1994), and *Power Integrations, Inc. v. Chan-Woong Park*, No. 16-cv-02367-BLF, 2017 WL 733224 (N.D. Cal. Feb. 24, 2017), are not persuasive, as each rely on supplemental jurisdiction in reaching their conclusions.

Finding Defendant's arguments of futility unavailing at the pleading stage, the Court will grant Plaintiff leave to amend its complaint to add Counts III and V. *See* Doc. 30 at 4-5. Defendant can raise this issue again at summary judgment.

### 3. Counts IX and X.

Proposed Counts IX and X allege that Defendant's filing of the petitions in the Canadian patent office and the USPTO constitute abuse of process. Adding these counts would be futile because, as a matter of Arizona law, filing petitions which may result in reexamination of patents does not constitute abuse of process.

The elements of an abuse of process claim are "(1) an ulterior purpose and (2) a willful act in the use of judicial process not in the regular conduct of the proceeding." *Spears v. Ariz. Bd. of Regents*, 372 F. Supp. 3d 893, 921 (D. Ariz. 2019) (quoting *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1252 (9th Cir. 1987)). There is no liability for abuse of process when "the defendant has done nothing more than legitimately utilize

the process for its authorized purposes, even though with bad intentions." *Id.* (quoting *Nienstedt v. Wetzel*, 651 P.2d 876 (Ariz. Ct. App. 1982)).

Unlike the tort of malicious prosecution, which covers the initiation of civil proceedings with malice and without probable cause, abuse of process addresses misuse of process after proceedings have been initiated. *See Joseph v. Markowitz*, 551 P.2d 571, 574 (Ariz. Ct. App. 1976). An abuse of process claim "requires some act beyond the initiation of a lawsuit," or, as in this case, an administrative proceeding. *Id.* at 575. Abuse of process "'is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish.'" *Id.* at 574 (citation omitted). Courts have "explicitly rejected the contention that the initiation of a lawsuit can constitute the necessary act" for abuse of process. *Blue Goose Growers, Inc. v. Yuma Groves, Inc.*, 641 F.2d 695, 697 (9th Cir. 1981) (citation omitted).

While administrative proceedings may constitute "judicial process," merely requesting that some authority consider taking actions that could constitute judicial (or quasi-judicial) process is not judicial process itself. *See Goldman v. Sahl*, 462 P.3d 1017, 1035 (Ariz. Ct. App. 2020) (holding that filing a bar charge was not "use of process" because "[f]iling a bar charge is like an individual making a police report and allowing a prosecutor – here the State Bar – to exercise his or her discretion in determining whether to proceed").

### 4. Count XI.

Proposed Count XI alleges that, by filing a petition for IPR on three patents unrelated to the Licensing Agreement, Defendant breached an implied duty of good faith and fair dealing owed under the License Agreement. Doc. 30-1 ¶¶ 131-35. The Court will deny the Plaintiff leave to amend its complaint to add Count XI.

Under Delaware law, the implied covenant is a "limited and extraordinary legal remedy." *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010). Applying it involves a "cautious enterprise" which courts should only undertake when a party has acted

"arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected." *Id.* at 1126. The covenant applies only to analyze unanticipated developments or to fill gaps in the contract's provisions, and only when the contract at issue is "truly silent" about the matter at hand. *Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 507 (Del. 2019). Courts interpreting contracts "should be most chary about implying a contractual protection when the contract could easily have been drafted to expressly provide for it." *Id.*

Stating a claim for breach of the implied covenant of good faith and fair dealing requires a plaintiff to allege "a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage." *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 888 (Del. Ch. 2009). Defendant argues that Plaintiff has failed to allege any specific obligation implied in the Licensing Agreement and that, in any case, there is no "gap" in the Agreement for this Court to fill with the implied covenant. The Court agrees that there is no contractual gap in the Licensing Agreement that justifies implying this contractual term and will accordingly deny leave to amend to add Count XI.[3] *See* Doc. 30 at 6-7. By Plaintiff's own characterization, the challenged patents are "completely" and "wholly" unrelated to those with which the Licensing Agreement is concerned. Doc. 30-1 ¶¶ 38, 134; *see also* Doc. 34 at 7. Actions taken against patents so unrelated to the substance of the Licensing Agreement cannot plausibly frustrate the fruits of the Agreement reasonably expected by Plaintiff.

Moreover, the Licensing Agreement is not truly silent as to whether Defendant can pursue IPR of Plaintiff's patents. *See* Doc. 20-2 § 2.4. The No-Contest Provision specifically prohibits Defendant from seeking IPR or equivalent review of patents licensed under the Agreement. *Id.* The parties could have added other patents to this provision, but did not. The covenant is not to be applied as "an equitable remedy for rebalancing

---

[3] Defendant also argues that amended Counts X (abuse of process) and XI (breach of the implied covenant) are barred by Arizona's Anti-SLAPP statute, Ariz. Rev. Stat. Ann. § 12-752. Doc. 31 at 16-17. Plaintiff contends that the Anti-SLAPP statute conflicts with Fed. R. Civ. P. Rules 12, 15, and 56, and is procedural for *Erie* purposes and thus not applicable to the claims. Doc. 34 at 9-11. Because the Court will deny leave for Plaintiff to add Counts X and XI on other grounds, this argument is moot.

- 11 -

economic interests – particularly where, as here, the parties are sophisticated business persons or entities." *Oxbow*, 202 A.3d at 508 (internal quotations and citations omitted).

**IT IS ORDERED:**

1. Plaintiff's motion for leave to amend the complaint (Doc. 30) is **granted** as to Counts I, II, III, IV, V, VI, VII, VIII, and XII, and **denied** as to Counts IX, X, and XI.
2. Defendant's motion to dismiss (Doc. 20) is **denied**.
3. Plaintiff shall file an appropriate amended complaint within 10 days of this order.
4. The Court will set a case management conference by separate order.

Dated this 13th day of October, 2021.

David G. Campbell
Senior United States District Judge