**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

C. R. Bard, Inc.,

                Plaintiff/Counterdefendant,

v.

Atrium Medical Corporation,

                Defendant/Counterclaimant.

No. CV-21-00284-PHX-DGC

**ORDER**

Plaintiff C. R. Bard, Inc. ("Bard") asserts breach of contract and related claims against Defendant Atrium Medical Corporation ("Atrium").  *See* Docs. 1, 37, 53.  Atrium moves to dismiss Bard's second amended complaint for failure to state a claim for relief. Docs. 53, 61.  Bard moves to dismiss Atrium's amended counterclaims as time barred. Docs. 57, 63.  The motions are fully briefed (Docs. 65, 68, 69, 71, 74), and oral argument will not aid the Court's decision.  *See* LRCiv 7.2(f).  For reasons stated below, the Court will deny each motion.

**I.**      **Background.**

In August 2010, Bard's wholly-owned subsidiary, Bard Peripheral Vascular ("BPV"), filed suit against Atrium alleging infringement of U.S. Patent 6,435,135 ("'135 Patent").  *See BPV, Inc. v. Atrium Med. Corp.*, No. 2:10-cv-01694-PHX-DGC (D. Ariz. Aug. 10, 2010).  In January 2011, Bard and Atrium entered into a Settlement Agreement and a Licensing Agreement.  *See* Docs. 61-2, 61-3.

1    Under those Agreements, BPV's infringement claim against Atrium was dismissed
2  and Atrium was granted a license to the '135 Patent and all other patents that rely on the
3  '135 Patent ("Licensed Patents").  *See* Docs. 61-2 § 2(c), 61-3 § 2.1.  Atrium agreed in the
4  License Agreement to pay royalties to Bard in an amount equal to 15% of net sales of
5  licensed products or a minimum of $3.75 million quarterly.  *See* Doc. 61-3 §§ 3.1, 3.2.  The
6  License Agreement remains in effect until the last of the Licensed Patents expires.  *See id.*
7  §§ 1.15, 7.1.   Bard claims that Canadian Patent 1,341,519 ("Canadian Patent") is a
8  Licensed Patent and the Agreement is effective until January 2, 2024 – the date on which
9  the Canadian Patent expires.  *See* Doc. 53 ¶¶ 15, 22-23, 31.

10    The '135 Patent expired on August 20, 2019.  *See* Doc. 53 ¶ 24.  Thereafter, Atrium
11  made royalty payments to Bard totaling 15% of its net profits on licensed products at
12  amounts significantly lower than the $3.75 million due each quarter under the minimum
13  royalties provision.  *See id.*; 61-3 § 3.2.[1]  Atrium claims that the License Agreement ended
14  when the '135 Patent expired.  Doc. 61 at 6.[2]  Bard alleges that Atrium's failure to make
15  minimum royalty payments after the '135 Patent expired constitutes a breach of the
16  Agreements.  Doc. 53 ¶¶ 26, 53, 83.  Atrium counters that no royalty payments were owed
17  to Bard after the '135 Patent expired because BPV – not Bard – owns the Canadian Patent.
18  *See* Docs. 44 at 4, 61 at 6, 20.

19    Bard's first amended complaint asserts claims for breach of contract (Counts I-V),
20  declaratory judgment (Count VI), specific performance (Count VII), promissory estoppel
21  (Count VIII), and quantum meruit (Count XII).  Doc. 37 ¶¶ 51-111, 115-19.[3]

22  _____

[1] According to Bard, for the quarter during which the '135 Patent was still partially
23  valid, Atrium paid Bard $2,078,084.  Doc. 53 ¶ 25.  For the subsequent quarters, Atrium
   paid Bard $139,391, $132,149, $105,070, $138,399.73, $139,015.34, $91,029.74, and
24  $97,467.09, for a grand total of $2,921,145.90.  *Id.*  Had the minimum royalty amount been
   paid quarterly over the same time period, Atrium would have paid Bard $30 million,
25  $27,078,854.10 more than it has paid.

26  [2] Page citations are to numbers attached to the top of pages by the Court's electronic
   filing system.

27  [3] The Court denied Bard leave to add claims for abuse of process (Counts IX and X)
28  and breach of the covenant of good faith and fair dealing (Count XI).  *See id.* ¶¶ 112-14;
   Doc. 35 at 9-12.

1   A hearing was held on December 20 to discuss a possible motion for sanctions
2   against Bard under Rule 11 of the Federal Rules of Civil Procedure.  *See* Doc. 54.  Atrium
3   claimed that Bard falsely states in paragraph eight of the complaint that it owns the
4   Canadian Patent.  Doc. 59 at 4-5.  Bard argued that this statement is not false because Bard
5   owns BPV and its assets, including the Canadian Patent.  *Id.* at 14-15.  Bard offered to
6   resolve the dispute by amending paragraph eight to make clear that it owns the Canadian
7   Patent "through its wholly-owned subsidiary [BPV]."  *Id.* at 16.[4]  The Court found that a
8   Rule 11 motion was not appropriate and that Bard should simply amend the complaint.
9   Doc. 59 at 25-27.

10   Bard filed the second amended complaint on December 21.  Doc. 53.  A week later,
11   Atrium filed amended counterclaims for breach of contract, unjust enrichment, fraudulent
12   inducement, and negligent misrepresentation.  Doc. 57.

13   **II.   Atrium's Motion to Dismiss Bard's Second Amended Complaint.**

14   As noted, minimum royalties are owed under the License Agreement until the
15   expiration of all Licensed Patents.  Doc. 61-3 §§ 3.2, 7.1.  Licensed Patents include the
16   '135 Patent and "all other patents of [Bard]" that rely on the '135 Patent.  *Id.* § 1.15.  While
17   the '135 patent expired in August 2019, the Canadian Patent – which relies on the '135
18   Patent – remains valid until January 2024.  *See* Docs. 44 at 2, 53 ¶¶ 8, 23-24, 31.

19   Bard alleges in Count I that Atrium has breached the License Agreement by failing
20   to make minimum royalty payments after the '135 Patent expired.  Doc. 53 ¶¶ 22-29, 51-55.
21   Atrium contends that Bard does not own the Canadian Patent and it therefore is not a
22   Licensed Patent under the Agreement.  Doc. 61 at 14-16.  Atrium moves to dismiss Count I
23   and all remaining claims for failure to state a claim for relief.  *See id.* at 11-17.

24   **A.   Rule 12(b)(6) Standard.**

25   Under Rule 12(b)(6), the well-pled factual allegations of the complaint are taken
26   as true and construed in the light most favorable to the plaintiff.  *See Cousins v. Lockyer*,

27
28   [4] The proposed amendment is consistent with paragraph six of the complaint, which
alleges that "Bard, through its wholly-owned subsidiary [BPV], is the owner of [the] '135
Patent[.]"  Doc. 37 ¶ 6.

1    568 F.3d 1063, 1067 (9th Cir. 2009).  A complaint that sets forth a cognizable legal theory

2    will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true,

3    to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662,

4    678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has

5    facial plausibility when the plaintiff pleads factual content that allows the court to draw the

6    reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Although

7    the plausibility standard requires "more than a sheer possibility that a defendant has acted

8    unlawfully[,]" it "is not akin to a 'probability requirement[.]'"  *Id.* (citing *Twombly*, 550

9    U.S. at 556).

10           **B.       Bard Has Pled a Plausible Breach of Contract Claim.**

11           The parties agree that Delaware law governs Bard's breach of contract claims.  *See*

12   Docs. 53 ¶ 13, 61 at 7, 61-2 § 14, 61-3 § 8.5.  "The elements of a breach of contract under

13   Delaware law are: '(1) a contractual obligation; (2) a breach of the obligation by the

14   defendant; and (3) a resulting damage to the plaintiff.'"  *Miller v. Trimont Glob. Real Est.*

15   *Advisors LLC*, No. CV 21-49-MAK, 2022 WL 610820, at *4 (D. Del. Feb. 28, 2022)

16   (quoting *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003)); *see also*

17   *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (explaining that

18   the plaintiff must allege these three elements "to survive a motion to dismiss for failure to

19   state a breach of contract claim").

20           Bard alleges that the License Agreement constitutes a valid and enforceable contract

21   between Bard and Atrium, the Canadian Patent is a Licensed Patent under the Agreement,

22   and Atrium has an obligation under the Agreement to make minimum royalty payments of

23   $3.75 million each quarter until the Canadian Patent expires.  Doc. 53 ¶¶ 15, 17, 22-23, 52;

24   *see also* Doc. 61-3 §§ 1.15, 3.2.  Bard further alleges that Atrium has breached that

25   obligation by refusing to make minimum royalty payments.  Doc. 53 ¶¶ 24-26, 53.  And

26   Bard claims that it has been damaged by Atrium's breach in an amount not less than $27

27   million.  *Id.* ¶¶ 27-29, 54.  The Court finds that Bard has pled each element of a breach of

28   contract claim under Delaware law.  *See* Doc. 35 at 4 (reaching the same conclusion in

denying Atrium's initial motion to dismiss); *Murdock v. Omega Fin., LLC,* No. 7:20-CV-00508-RDP, 2020 WL 3791878, at *3 (N.D. Ala. July 7, 2020) (finding that the plaintiff stated a breach of contract claim under Delaware law by alleging that the parties' stock purchase agreement constitutes a contractual obligation, the defendant breached the obligation by failing to pay an indemnity holdback amount, and the breach damaged the plaintiff in the amount of $458,000); *Johnson v. GEICO Cas. Co.*, 516 F. Supp. 2d 351, 357-58 (D. Del. 2007) (finding that the plaintiffs had "sufficiently pled the requirements for a breach of contract claim so as to withstand dismissal" by alleging that they entered into insurance contracts with the defendants, personal injury coverage provided in those contracts was denied, and the plaintiffs were harmed by these breaches).

Atrium notes that while a complaint's factual allegations need not be detailed, surviving a Rule 12(b)(6) motion "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Doc. 61 at 12 (quoting *Twombly*, 550 U.S. at 555); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). But the complaint does not merely recite the elements of a breach of contract claim.  It contains detailed factual allegations that are "enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555.  Specifically, the complaint alleges that BPV is Bard's wholly-owned subsidiary, that Bard owns the Canadian Patent through BPV, that the Canadian Patent is within the scope of the License Agreement, and that Atrium has breached the Agreement and damaged Bard by failing to pay minimum royalties.  Doc. 53 ¶¶ 1, 8, 15, 22-23, 25-29.  These factual allegations "possess enough heft to 'show that [Bard] is entitled to relief.'" *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Atrium's contention that the breach of contract claim is not plausible lacks merit. *See* Doc. 61 at 16-20  The terms of the Settlement Agreement and the License Agreement suggest that Bard exercised its ownership control over BPV to grant a license to the Licensed Patents, and Atrium understood that fact. *See* Doc. 63 at 7.  After the Agreements

had been executed, Bard caused BPV to dismiss the patent infringement claim against Atrium, and Atrium began using the technology covered by the Licensed Patents without fear of further litigation. *See id.*; Doc. 53 ¶¶ 9-15. Under the License Agreement, Atrium has paid Bard more than $130 million in royalties since 2011. *See* Doc. 61 at 1, 7. Given this history, and construing the complaint's factual allegations in the light most favorable to Bard, *see Cousins*, 568 F.3d at 1067, the Court cannot conclude that the breach of contract claim "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557 (brackets omitted); *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").[5]

According to Atrium, the breach of contract claim should be dismissed because Bard "now admits that BPV, a separate and distinct entity, owns the Canadian Patent." Doc. 61 at 11 (citing Doc. 53 ¶ 8); *see also* Doc. 69 at 7 ("Bard concedes that . . . the Canadian Patent has been 'owned by' BPV, not C.R. Bard.") (citations and brackets omitted). But the complaint states that "*Bard . . . owns the Canadian Patent* and all substantive rights in and to the Canadian Patent." Doc. 53 ¶ 8 (emphasis added). While Bard claims to own the Canadian Patent "through its wholly-owned subsidiary [BPV]" (*id.*), the Court cannot simply ignore Bard's alleged ownership interest in the Canadian Patent. *See* Doc. 65 at 7; *Twombly*, 550 U.S. at 555 (explaining that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Iqbal*, 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 44-45 (9th Cir. 2022) ("The standard for surviving a motion to dismiss under Rule 12(b)(6) is a familiar one: a complaint must contain sufficient factual matter, *accepted as true*, to state a claim

---

[5] Atrium notes that the complaint does not specifically allege that "other patents of Licensor" means "other patents of [Bard]," but acknowledges that this is "a necessary inference from the pleading[.]" Doc. 69 at 7.

to relief that is plausible on its face.") (emphasis added); *see also McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007) (finding that the plaintiff's complaint for patent infringement contained "enough detail to allow the defendants to answer and thus meets the notice pleading required to survive a Rule 12(b)(6) motion" where the plaintiff alleged ownership of the patent and described the means of infringement); *Iguana, LLC v. Lanham*, No. 7:08-CV-09 (CDL), 2009 WL 1620586, at *2 (M.D. Ga. June 9, 2009) (same).[6]

Atrium notes that under Delaware law, clear and unambiguous contract terms must be given their ordinary meaning without reference to extrinsic evidence. Doc. 61 at 7, 13-14, 19-20 (citations omitted). The License Agreement states that Bard is the "Licensor." Doc. 63-1 at 1, ¶ 1.18. According to Atrium, "Delaware law construes 'Licensor' to mean what it says: C.R. Bard." Doc. 61 at 7. Atrium contends that dismissal is warranted because Bard does not allege that "Licensor" includes BPV and any such allegation would not pass muster under *Iqbal* and *Twombly* as it would be inconsistent with the License Agreement's express terms. *Id.* at 6-7, 18. But Bard does not dispute that it is the sole Licensor under the Agreement. *See* Doc. 65 at 16 ("Bard, not BPV, is the Licensor."); Doc. 69 at 7 ("Bard concedes that it alone, and not BPV, is the 'Licensor[.]'"). Bard argues that "as BPV's corporate parent, [Bard] can act as the Licensor and grant Atrium a license to BPV's patents." Doc. 65 at 16; *see id.* at 6-7, 9-10 (citing cases). Atrium does not dispute that argument. *See* Doc. 69 at 8-9.

Atrium cites several cases for the proposition that a parent company's corporate ownership of a subsidiary does not confer on the parent company ownership of the subsidiary's patents. Doc. 61 at 16-17 (citations omitted). Bard counters that the cited cases are inapposite to this breach of contract action, noting that while a corporate parent

---

[6] Contrary to Atrium's assertion, Bard does not ask the Court to "conclude, as a matter of law, that the Canadian Patent may be deemed to be owned by C.R. Bard merely because C.R. Bard owns BPV and BPV owns the Canadian Patent." Doc. 69 at 11-12. Bard merely notes that the complaint's well-pled allegations about its ownership of the Canadian Patent "cannot simply be ignored by the Court" in ruling on this motion. Doc. 65 at 7.

may not bring an infringement suit in its own name, this does not mean that it cannot license the patents of its subsidiary.  Doc. 65 at 9-11.[7]

As the Federal Circuit has recently explained, determination of patent ownership is an issue that "requires robust fact development[.]"  *Atleisure, LLC v. Sunvilla Corp.*, No. 1:20-CV-4662-TWT, 2021 WL 2449855, at *4 (N.D. Ga. May 5, 2021) (citing *AntennaSys, Inc. v. AQYR Techs., Inc.*, 976 F.3d 1374, 1381 (Fed. Cir. 2020)).  The Court concludes that, to the extent the issue of patent ownership is material to the breach of contract claim, that issue is best resolved on summary judgment or at trial.  *See* Doc. 59 at 26 (noting at the December 20 hearing that "there may well be a factual issue . . . about what was intended by the parties in the license and the settlement agreement that cannot be resolved on a motion to dismiss"); *AntennaSys, Inc.*, 976 F.3d at 1377 (concluding that "the appropriate thing to do is to deny the Motion to Dismiss and address the question of ownership of the patent at the summary judgment stage"); *Windy City Innovations, LLC v. Facebook, Inc.*, 411 F. Supp. 3d 886, 893 (N.D. Cal. 2019), *aff'd*, 835 Fed. App'x 610 (Fed. Cir. 2021) (finding that "disputed issues of material fact as to [patent] ownership rights preclude dismissal"); *Danfoss Turbocor Compressors B.V. v. Johnson Controls, Inc.*, No. 4:10CV145-RH/WCS, 2010 WL 11519527, at *1 (N.D. Fla. Aug. 25, 2010) ("[T]here is much to be said for the proposition that when a defendant . . . contests the plaintiff's allegation that it owns the patent at issue, the factual dispute over that allegation must be resolved . . . through a Rule 56 summary-judgment motion or a trial."); *Zeiss A.G. v. Nikon Corp.*, No. 2:17-cv-07083-RGK-MRW, 2018 WL 5078256, at *3 (C.D. Cal. Oct. 4, 2018) (denying summary judgment because "there is a [triable] issue of whether Plaintiffs own

---

[7] Atrium asserts that Bard, through its same counsel of record in this case, argued in another case that it should be dismissed because it did not own patents of its wholly-owned subsidiary.  Doc. 61 at 16 (citing *CryoLife, Inc. v. C.R. Bard, Inc.*, No. CV 14-559-SLR, 2015 WL 1069397 (D. Del. Mar. 10, 2015)).  Bard notes, correctly, that *CryoLife* does not address the relevant question in this breach of contract case – whether a corporate parent has sufficient ownership control over a subsidiary to grant licenses to the subsidiary's patents – and instead held that only the legal owner of the patent can be a named party in a patent infringement action.  Doc. 65 at 12; *see CryoLife*, 2015 WL 1069397, at *2 ("A suit for infringement must ordinarily be brought by a party holding legal title to the patent.  A court, therefore, lacks jurisdiction over a declaratory judgment action if the patent holder is not a defendant.").

the rights to the patents"); *Tucker v. Oregon Aero, Inc.*, 474 F. Supp. 2d 1192, 1211 (D. Or. 2007) (denying summary judgment "because the issue of whether plaintiff had any ownership rights to the patents remains outstanding"); *Sim Kar Lighting Fixture Co. v. Genlyte, Inc.*, 906 F. Supp. 967, 974 (D.N.J. 1995) (denying summary judgment because "a material issue of fact exists concerning [the defendant's] ownership rights in the '132 patent").[8]

Because the second amended complaint's allegations are sufficient to state a plausible claim for breach of contract, Atrium's motion to dismiss will be denied.

### III.    Bard's Motion to Dismiss Atrium's Amended Counterclaims.

Atrium alleges that Bard misrepresented that it owns the '135 Patent to induce Atrium into executing the License Agreement, and that Bard has never provided a license to the '135 Patent as promised in the License Agreement.  Doc. 57 ¶¶ 4, 62.  Atrium asserts counterclaims for breach of contract, unjust enrichment, fraudulent inducement, and negligent misrepresentation.  *Id.* ¶¶ 5, 89-124.  Atrium seeks to recover the more than $130 million it has paid Bard since the License Agreement became effective in 2011.  *Id.* ¶¶ 4, 6.

Each counterclaim depends on Atrium's allegation that Bard does not own the '135 Patent.  *Id.* ¶¶ 58-61, 92-93, 100, 104-08, 116-19.  Bard asserts that Atrium knew or should have known who owned the '135 Patent when it entered into the Settlement Agreement and the License Agreement in 2011.  Doc. 63 at 5-7.  Bard contends that Atrium's claims therefore accrued in 2011 and, regardless of the law to be applied, are barred by a statute of limitations that is six years or less.  *Id.* at 7, 10-16. Bard further contends that Atrium has failed to plead facts sufficient to toll the running of the limitation periods under the discovery rule.  Doc. 63 at 7, 16-21.[9]

---

[8] Atrium asserts in its reply that "Bard's claims are all amenable to resolution as a matter of law" because extrinsic evidence about what the parties intended in the License Agreement is not admissible under Delaware law.  Doc. 69 at 6-7.  But as noted, the complaint contains sufficient allegations to state a plausible breach of contract claim, including the allegation that Bard owns the Canadian Patent through BPV.  Doc. 53 ¶ 8. Whether the Canadian Patent is a "patent[] of [Bard]" (Doc. 61-3 § 1.15) is not a purely legal issue.

[9] The parties cite both Arizona and Delaware law in addressing Bard's motion to dismiss.  *See* Docs. 63 at 10-20, 68 at 9-21.  The Court will do the same.

"Under Arizona's discovery rule, a claim does not accrue until 'the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underling the cause.'" *Perez v. First Am. Title Ins. Co.*, No. CV-08-1184-PHX-DGC, 2010 WL 1507012, at *3 (D. Ariz. April 14, 2010) (quoting *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 966 (Ariz. 1995)); *see also McGill v. Nat'l Specialty Ins. Co.*, No. CV-12-01671-PHX-DGC, 2013 WL 331256, at *6 (D. Ariz. Jan. 29, 2013) (Arizona's "discovery rule tolls limitations until the plaintiff possess a minimum knowledge sufficient to recognize that a wrong occurred and caused injury") (quoting *ELM Ret. Ctr., LP v. Callaway*, 246 P.3d 938, 941 (Ariz. Ct. App. 2010)).  Delaware law provides a similar discovery rule where the alleged injury is inherently unknowable and sustained by a blamelessly ignorant plaintiff.  *See David B. Lilly Co. v. Fisher*, 18 F.3d 1112, 1117 (3d Cir. 1994) (citing *Isaacson, Stolper & Co. v. Artisan's Sav. Bank*, 330 A.2d 130, 132 (Del. 1974); *Kaufman v. C.L. McCabe & Sons, Inc.*, 603 A.2d 831, 835 (Del. 1992)).  Under this rule, "the statute of limitations will begin to run 'upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts.'"  *TL of Fla., Inc. v. Terex Corp.*, 54 F. Supp. 3d 320, 328 (D. Del. 2014) (quoting *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004)).

Atrium alleges that it first discovered that Bard does not own the '135 Patent during this litigation.  Doc. 57 ¶¶ 3, 26, 54-57.  Atrium further alleges that it had no reason to believe that anyone other than Bard owns the '135 Patent because Bard made repeated representations – during negotiations in 2010 and in the License Agreement – that Bard, not BPV, owns the '135 Patent.  *Id.* ¶ 29.  Atrium claims that a reasonable company in its position would have had no reason to confirm the veracity Bard's ownership statements, that Atrium exercised reasonable diligence by relying on those statements, and that Bard and BPV alone possessed information about the ownership of the '135 Patent.  *Id.* ¶¶ 31, 43-47, 52-53.  Bard counters that, through the exercise of reasonable diligence, Atrium

1    could have discovered that BPV owned the '135 patent by September 2013 – when the

2    '135 Patent was recorded in the Canadian Patent Office.  Doc. 63 at 8-9, 17-20.

3           Under both Arizona and Delaware law, the issue of whether the discovery rule tolls

4    the limitations period generally is a fact-intensive inquiry to be resolved by the trier of fact.

5    *See Gust, Rosenfeld & Henderson*, 898 P.2d at 969 ("The statute of limitations did not

6    commence on [plaintiff]'s claim until [plaintiff] knew or in the exercise of reasonable

7    diligence should have known that it had been injured.  The trial court was correct to let the

8    jury decide when that event occurred."); *IceMOS Tech. Corp. v. Omron Corp.*, No. CV-

9    17-02575-PHX-JAT, 2019 WL 5960069, at *3 (D. Ariz. Nov. 13, 2019) ("Whether to

10   apply the discovery rule generally 'depends on resolution of . . . factual issues,' and thus,

11   a court cannot resolve these questions on summary judgment."); *Barten v. State Farm Mut.

12   Auto. Ins. Co.*, 28 F. Supp. 3d 978, 999 (D. Ariz. 2014) ("Because the discovery rule

13   mitigates the harshness of statutory limitations by equitably considering the facts of each

14   case, the question of when a plaintiff discovered or should have discovered facts giving

15   rise to a claim is 'usually and necessarily' left to the jury.") (quoting *Doe v. Roe*, 955 P.2d

16   951, 961 (Ariz. 1998)); *Hutchinson v. Bos. Sci. Corp.*, No. 20-CV-1084-RGA, 2020 WL

17   5752393, at *3 (D. Del. Sept. 25, 2020) (the discovery rule involves "a fact-intensive

18   inquiry to determine whether a plaintiff was blamelessly ignorant of a potential claim or

19   dilatory in pursuing the action."); *Shockley v. Minner*, 726 F. Supp. 2d 368, 376 (D. Del.

20   2010), *aff'd*, 448 F. App'x 263 (3d Cir. 2011) ("The determination of when a reasonable

21   person knew or should have known of the facts constituting a claim is a fact intensive

22   inquiry."); *Live Face on Web, LLC v. Rockford Map Gallery, LLC*, No. CV 17-539, 2020

23   WL 5821750, at *3 n.2 (D. Del. Sept. 30, 2020) ("Ordinarily, when the facts are in dispute,

24   the date on which the discovery rule is triggered is left to the fact finder.").

25          Atrium has pled facts sufficient to invoke the discovery rule.  *See* Doc. 57 ¶¶ 3, 26,

26   29, 31, 43-47, 52-57.  And because the determination of whether the limitations period has

27   been tolled "requires a factual inquiry not amenable to resolution on a motion to dismiss[,]"

28   the Court will deny Bard's motion.  *TL of Fla.*, 54 F. Supp. 3d at 329.  Indeed, many courts

have held that a Rule 12(b)(6) motion is not a proper procedural vehicle to resolve application of the discovery rule.[10]  *See Shockley*, 2008 WL 2699978, at *4 ("Whether Corporal Shockley can meet [his] burden [under the discovery rule] is a factual question that the Court cannot resolve as a matter of law in the context of Defendants' motion to dismiss."); *Wal-Mart Stores*, 860 A.2d at 321 ("[T]he pleaded facts . . . create a reasonable inference that Wal-Mart was blamelessly ignorant of the 'wrongful acts.'  To be sure, the pleaded facts also create reasonable inferences to the contrary.  A Rule 12(b)(6) motion, however, is not a proper procedural vehicle to resolve conflicting inferences of fact."); *Krasemann v. Scholastic Inc.*, No. CV-18-08313-PCT-DWL, 2019 WL 3220535, at *7 (D. Ariz. July 17, 2019) ("[W]hether the statute of limitations has expired is a fact-based inquiry and thus an improper ground for seeking dismissal at the pleading stage.") (quotation marks omitted).[11]

Bard asserts that the important inquiry in applying the discovery rule is whether the conduct causing the injury "is difficult for plaintiff to detect."  Doc. 71 at 7 (quoting *Gust, Rosenfeld & Henderson*, 182 Ariz. at 590); *see also* Docs. 63 at 16-17, 71 at 7-8 (citing *DuBose v. Wyndham Vacation Resorts, Inc.*, No. CV 20-1118-CFC, 2021 WL 3145206, at *4 (D. Del. July 26, 2021) (noting that the discovery rule required the plaintiffs to plead facts showing that it was "practically impossible for them to discover the existence of a cause of action"); *Cavan v. Maron*, 182 F. Supp. 3d 954, 963 (D. Ariz. 2016) (the plaintiff must plead facts showing an "inability to have made earlier discovery despite reasonable diligence")).  But even if true, the Court concludes that whether the discovery rule applies in this case is best resolved on summary judgment or at trial.[12]

---

[10] Given this ruling, the Court need not consider Atrium's alternative arguments that equitable tolling and fraudulent concealment preclude dismissal and that Bard's breach of contract and fraud is ongoing.  *See* Doc. 68 at 15-22.

[11] By denying Bard's motion to dismiss, the Court does not find that Atrium's claims necessarily will survive a statute of limitations challenge on summary judgment and go to a jury, only that the amended counterclaims are sufficient to survive a motion to dismiss.  *See Quinonez v. Remington Arms Co. LLC*, No. CV 11-02319-PHX-NVW, 2012 WL 1623205, at *3 (D. Ariz. May 9, 2012).

[12] Contrary to Bard's assertion, Atrium has not ignored BPV's 2010 complaint and waived related arguments.  *See* Docs. 71 at 5-6, 74 at 2.

Bard's alternative argument for dismissal – that it has not breached its obligation to license the '135 Patent to Atrium – lacks merit because Bard has not shown that Atrium fails to state a plausible breach of contract or tort claim. *See* Doc. 63 at 21.

**IT IS ORDERED:**

1.    Atrium's motion to dismiss the second amended complaint (Doc. 61) is **denied**.

2.    Bard's motion to dismiss Atrium's amended counterclaims (Doc. 63) is **denied**.

3.    Atrium's unopposed motion to file a sur-reply (Doc. 73) is **granted**.  The Clerk shall filed the lodged proposed sur-reply (Doc. 74).

Dated this 18th day of April, 2022.

David G. Campbell
Senior United States District Judge