**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| C. R. Bard, Inc., <br><br>                   Plaintiff, <br><br>v. <br><br>Atrium Medical Corp., <br><br>                   Defendant. | No. CV-21-00284-PHX-DGC <br><br>**ORDER** |

Following a two-day bench trial, the Court ruled that Bard's claim for breach of contract was barred by the patent misuse doctrine. Doc. 189. Atrium appealed and the Ninth Circuit reversed. *See C. R. Bard., Inc. v. Atrium Medical Corp.*, 112 F.4th 1182 (9th Cir. 2024). The Court of Appeals held that the patent misuse doctrine does not prevent enforcement of the minimum royalties provisions in the parties' License Agreement. *Id.* The appellate mandate issued on December 16, 2024, and the Court directed the parties to file a joint memorandum setting forth their views on next steps. Docs. 201-02.

The parties' joint memorandum presents very different views of the remaining tasks. Doc. 203. Bard argues that the Ninth Circuit's ruling, combined with the Court's previous rejection of Atrium's contract interpretation arguments (which was affirmed on appeal), ends the factual and legal inquiry on Bard's breach of contract claim, and that only calculation of damages and interest remains. *Id.* at 2-5. Atrium argues that the Ninth Circuit fundamentally reinterpreted the parties' License Agreement in a way never argued before this Court. Atrium asserts that this new interpretation raises a number of contract

enforcement defenses that were not relevant before, including (1) whether there was a meeting of the minds between the parties on essential contract terms, (2) whether the contract as reinterpreted by the Ninth Circuit is unconscionable and unenforceable, (3) whether the contract as reinterpreted by the Ninth Circuit arose from a mutual or unilateral mistake, and (4) whether Bard is entitled to damages or other relief under the reinterpreted contract. *Id.* at 8-9.

The Court agrees with Atrium that the Ninth Circuit's reading of the License Agreement had not been advocated by either party before this Court.[1] But the Ninth Circuit made clear that it was not interpreting the contract using traditional contract-interpretation principles. Rather, it was deciding a purely legal question: whether the royalty provisions were invalid under the patent misuse doctrine.

The Ninth Circuit followed the Supreme Court's decision in *Brulotte v. Thys Co.*, 379 U.S. 29 (1964), and its more recent decision in *Kimble v. Marvel Enterprises LLC*, 576 U.S. 446 (2015). The Court of Appeals relied heavily on *Kimble*'s observation that *Brulotte* "is simplicity itself to apply" and that "parties can often find a way around *Brulotte*." 112 F.4th at 1189.

This Court had construed the License Agreement under Delaware law (which the parties agreed controlled this case), found the agreement ambiguous (Doc. 143 at 16-21), and considered extrinsic evidence presented in the bench trial to determine the parties' actual intent (Doc. 189). The Ninth Circuit held that this was not the proper approach when

---

[1] In arguing that the Ninth Circuit adopted its longstanding position, Bard quotes an excerpt from its summary judgment briefing asserting that sales after the U.S. patent expired were "correlated" only to sales of Canadian products, but this argument was made solely in response to Atrium's "correlation" argument. Doc. 138 at 10. Two sentences later, Bard's brief stated its consistent position: "the fact that the Minimum Royalty obligation does not change even when the scope of the Licensed Products does change further confirms that *the Minimum Royalty is designed to compensate Bard for things other than the on-going sales of Licensed Products, such as pre-2011 sales*." *Id.* (emphasis added). This was Bard's steady argument before this Court – that the minimum royalties were compensation for Atrium's pre-2011 infringing sales (the subject of the parties' previous lawsuit) and off-label sales of Atrium's iCast products. *See* Docs. 132 at 18-19, 143 at 16-17. The Court expressly rejected this position after the bench trial. *See* Doc. 189 at 16. Bard never argued, as the Ninth Circuit found, that minimum royalties were payments solely for sales of the Canadian products.

applying *Brulotte* and *Kimble*. Instead, a court should construe the contract purely as a matter of law: "[the District Court's] factual findings do not control our review . . . because the application of the *Brulotte* rule is a question of law that depends on the terms of the contract at issue." 112 F.4th at 1191. "The *Brulotte* inquiry does not turn on the parties' motivations, the course of their negotiations, or the consideration received by either party in exchange for the inclusion of a particular contract term." *Id.* The Ninth Circuit further stated that "[w]e know of no published decision by any Court of Appeals that treats the application of *Brulotte* as a factual question turning on the parties' motivations during negotiations." *Id*. The Court therefore looked "only at the terms of the agreement" and asked whether those terms, without regard to the parties' motivations and intent, violated the patent misuse doctrine. *Id*. at 1191-92.

In short, the Court of Appeals held that "the application of the *Brulotte* rule is a question of law." *Id.* at 1191. It did not purport to reinterpret the License Agreement for other purposes, such as Bard's breach of contract claim, nor did it address this Court's express finding of ambiguity or its consideration of extrinsic evidence. This understanding of the Ninth Circuit's ruling is supported by the fact that the same panel affirmed this Court's remaining interpretation of the contract in a separate opinion – an interpretation that relied on state-law principles – without stating that it was using *Brulotte*'s law-only approach. *See C. R. Bard, Inc. v. Atrium Medical Corp.*, No. 23-16020, 2024 WL 3916211 (9th Cir. Aug. 23, 2024); Doc. 143.

The Court accordingly concludes that the Ninth Circuit's legal application of the *Brulotte* rule does not interpret the License Agreement for other purposes. The decision did not produce a radical reinterpretation of the License Agreement for purposes of Bard's breach of contract claim, as Atrium claims, and does not warrant reopening Atrium's case and allowing it to assert defenses never pled in its answer (*see* Doc. 80) and never asserted in this case, as explained below.[2]

---

[2] The Court acknowledges that this approach creates an uncomfortable dichotomy – one interpretation of the contract for patent misuse purposes and a different interpretation

3

Following the Court's summary judgment ruling and its finding that the minimum royalty provisions were ambiguous for purposes of the patent misuse doctrine, the Court asked the parties to identify the steps that remained in this case. Doc. 143 at 21. Atrium proposed "an evidentiary hearing to resolve Atrium's patent misuse defense *as well as Bard's remaining claims*." Doc. 145 at 2 (emphasis added). Bard proposed the same, but preferred to call it a bench trial. *Id.* Atrium agreed that there was only a "narrow scope of issues to be presented to the Court" and identified none of the issues it now seeks to litigate. *Id.* at 3.

The Court held the suggested hearing in the form of a two-day bench trial, addressed all of the issues the parties raised, and ultimately ruled that the patent misuse doctrine barred enforcement of the minimum royalty provisions after the date the U.S. patent expired. The Ninth Circuit's holding that the doctrine did not bar collection of the royalties resolves all issues Atrium and Bard had identified as remaining in this case. The Court accordingly concludes that the only tasks remaining are calculation of damages and interest.

**IT IS ORDERED:**

1. By **February 28, 2025**, Atrium shall produce to Bard sales information for its Licensed Products (i.e., those sold in Canada) for the period from March 22, 2023 (the

---

for all other purposes. But if the Ninth Circuit had intended to construe the License Agreement for all purposes it surely would have addressed this Court's application of Delaware law (Doc. 143 at 4-5), its express finding that the License Agreement was ambiguous (*id.* at 16-20), and its extensive factual findings based on the record at trial (Doc. 189). It did none of these things, and instead stated simply that it was undertaking the purely legal task of applying *Brulotte* and *Kimble*. Although the Court views this as the correct reading of the Court of Appeals' opinion, there are some ambiguities in the opinion. For example, the Ninth Circuit also stated: "Of course, what the parties' obligations are when a contractual provision is ambiguous can be a factual question that turns on what the parties intended the contract to require. But once a factfinder has answered that question, whether the contract's requirements constitute patent misuse under *Brulotte* is a question of law." *Id*. The factfinder in this case *did* "answer[] that question" – in detail. *See* Doc. 189. The Ninth Circuit disregarded the answer and instead provided its own "matter of law" construction. If the Court of Appeals did intend to interpret the contract for all purposes, this Court respectfully asks that it state that fact in any appeal of this order, because that fact might cause the Court to revisit Atrium's arguments that it should in fairness be permitted to raise contract issues that were never triggered by Bard's previous interpretation.

date Atrium received FDA approval for iCast) to January 2, 2024 (the expiration date of the Canadian Patent).

2. By **March 14, 2025**, Bard shall submit to the Court its proposed calculation of damages and interest, as well as a proposed form of judgment.

3. By **March 28, 2025**, Atrium shall submit a response to Bard's proposed calculation and form of judgment.

Dated this 5th day of February, 2025.

David G. Campbell
Senior United States District Judge