**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| C. R. Bard, Inc., | No. CV-21-00284-PHX-DGC |
| Plaintiff/Counterdefendant, | **ORDER AND JUDGMENT** |
| v. | |
| Atrium Medical Corp., | |
| Defendant/Counterclaimant. | |

The parties have submitted proposed calculations of the damages and interest to be awarded to Bard. Docs. 207, 210. Based on those submissions, the Court will enter judgment in favor of Bard in the total amount of $65,819,332. The Court will deny Atrium's requests for judgment in its favor and for leave to amend its pleading. Doc. 210 at 9-14, 16-21.

**I.    Background.**[1]

Bard alleges that Atrium breached the parties' License Agreement by failing to make minimum royalties. Doc. 53 ¶¶ 51-55. Following the Court's summary judgment ruling and its finding that the minimum royalty provisions in the parties' License Agreement were ambiguous, the Court asked the parties to identify the steps that remained in this case. Doc. 143 at 16-21. Atrium proposed an evidentiary hearing to resolve

---

[1] A more thorough description of the facts and procedural history of this case is set forth in the Court's order following the bench trial. Doc. 189.

Atrium's patent misuse defense as well as Bard's remaining claims. Doc. 145 at 2. Bard proposed the same, but preferred to call it a bench trial. *Id.*

The Court held the suggested hearing in the form of a two-day bench trial, addressed all of the issues raised by the parties, and ruled that the patent misuse doctrine barred enforcement of the minimum royalty provisions after the date the U.S. patent expired. Doc. 189. Atrium appealed and the Ninth Circuit reversed. Doc. 202-1; *see C. R. Bard., Inc. v. Atrium Medical Corp.*, 112 F.4th 1182 (9th Cir. 2024), *cert. denied*, No. 24-1143, 2025 WL 1549867 (June 2, 2025). The Ninth Circuit held that patent misuse does not bar enforcement of the minimum royalty provisions in the parties' License Agreement. Doc. 202-1 at 4. The Ninth Circuit separately affirmed the Court's summary judgment order resolving outstanding contract interpretation issues. Doc. 201-2.

On remand, the Court directed the parties to file a joint memorandum setting forth their views on next steps. Doc. 202. The parties' memorandum presented very different views of the remaining tasks. Doc. 203. Bard argued that the Ninth Circuit's ruling, combined with the Court's previous rejection of Atrium's contract interpretation arguments (which was affirmed on appeal), ended the factual and legal inquiry on Bard's breach of contract claim and only calculation of damages and interest remained. *Id.* at 2-5. Atrium argued that the Ninth Circuit completely reinterpreted the parties' License Agreement, and that this new interpretation raised several contract enforcement issues that were not relevant before, including (1) whether there was a meeting of the minds between the parties on essential contract terms, (2) whether the contract as reinterpreted by the Ninth Circuit is unconscionable, (3) whether the contract as reinterpreted by the Ninth Circuit arose from a mutual or unilateral mistake, and (4) whether Bard is entitled to damages or other relief under the reinterpreted contract. *Id.* at 8-12.

The Court agreed with Bard and rejected Atrium's argument. Doc. 204. The Court noted that Atrium had agreed there was only a narrow scope of issues to be presented to the Court in the bench trial and had identified none of the new issues it sought to litigate. *Id.* at 4. The Court concluded that the Ninth Circuit's holding that the patent misuse

doctrine did not bar collection of the royalties resolved all issues Atrium and Bard had identified as remaining in this case before the bench trial, and that the only tasks left were calculation of damages and interest. *Id.* The Court ordered Atrium to produce to Bard sales information for its Licensed Products sold in Canada for the period from March 22, 2023 (the date Atrium received FDA approval for iCast) to January 2, 2024 (the expiration date of the Canadian Patent). *Id.* at 4-5. The Court directed the parties to submit to the Court their respective proposed calculations of damages and interest. *Id.* at 5. The parties have provided those submissions. Docs. 207, 210.

**II.     Damages.**

Bard has shown that it is entitled to a total of $53,117,258 for the unpaid royalties under the License Agreement. Docs. 207 at 2-4, 207-1 at 2-3. Atrium does not dispute this damages calculation. Doc. 210 at 21. The Court accordingly will enter judgment for Bard in the amount $53,117,258.

**III.    Interest.**

The parties agree that Section 3.3 of the License Agreement specifies the timing of payments and how interest is to be calculated when payments are missed. Docs. 207 at 5, 210 at 14. Section 3.3 provides that "[n]ot later than the 15th day of each January, April, July and October of the Term (commencing April 15, 2011), Licensee must . . . pay to Licensor all such amounts due to Licensor." Doc. 160-13 at 6. Section 3.3 further provides that "[p]ayments provided for in this Agreement, when overdue, will bear interest at a rate per annum equal to two percent (2%) in excess of the 'Prime Rate' published by 'The Wall Street Journal' at the time such payment is due, and for the time period until payment is received by Licensor." *Id.*

Bard seeks $19,334,138 in variable-rate interest compounded quarterly (through April 14, 2025). Docs. 207 at 6-7, 207-2 at 2-3. This approach is based on Bard's contention that "the interest rate is recalculated every quarter" and applies to the "entire cumulative overdue balance including royalties accrued during the past quarter, past-due royalties[,] and interest accrued from previous quarters." Doc. 205 at 4-5. But this is not

3

consistent with the terms of the License Agreement. Section 3.3 states that an overdue payment "will bear interest at *a rate per annum* equal to two percent (2%) in excess of the 'Prime Rate' published by 'The Wall Street Journal' *at the time such payment is due*, and *for the time period until payment is received by Licensor*." Doc. 160-13 at 6 (emphasis added). In other words, the interest rate for each overdue payment (1) is set once, "at the time such payment is due," and (2) applies "until payment is received[.]" *Id.*; *see* Doc. 210 at 14-15. Contrary to Bard's assertion, the rate for any given overdue quarterly royalty payment does not reset every quarter, and there is no mention in the License Agreement of compound interest. *See* Doc. 160-13.[2]

Bard cites two cases for the proposition that periodic interest recalculations are appropriate when overdue royalty payments span multiple quarters: *Gentile v. Rossette*, No. CIV.A. 20213-VCN, 2010 WL 3582453 (Del. Ch. Sept. 10, 2010), and *McGlothlin v. Petrunich Oral & Maxillofacial Surgery*, No. N20C-08-186 FWW, 2023 WL 5747520, (Del. Super. Ct. Sept. 6, 2023). Doc. 207 at 6. But neither case involved an agreement that specified how interest should be calculated. *See Gentile*, 2010 WL 3582453, at *1 (finding the defendant liable for his breach of fiduciary duties); *McGlothlin*, 2023 WL 5747520, at *1 (the defendant unlawfully discriminated against its former employee).

Based on the calculation method specified in the parties' contract, the Court will award Bard prejudgment interest in the amount of $12,702,074 (through July 16, 2025, the date of judgment).[3]

Bard is also entitled to post-judgment interest if Atrium does not pay the judgment immediately. *See* Doc. 205-1 at 3. Under 28 U.S.C. § 1961(a), post-judgment interest is calculated at a rate equal to the weekly average 1-year Treasury constant maturity yield for

---

[2] Atrium notes that Bard's approach is further disproved by course of dealing, explaining that in each quarterly statement Atrium identified only amounts due for the immediately preceding quarter, not other past-due amounts. Doc. 210 at 16 (citing Trial Exs. PTX 114-34).

[3] The interest calculations are set forth in Exhibit A attached to this order and were based on the formulas Atrium used in calculating interest through April 14, 2025 (Doc. 210-1 at 2).

the calendar week preceding the date of judgment. *See Selected Interest Rates (Daily)*, Fed. Rsrv., https://www. federalreserve.gov/releases/H15 (listing daily rates for 1-year Treasury constant maturity yields). The post-judgment interest is "awarded on the entire amount of the specified judgment, including [the] pre-judgment interest." *Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050, 1056 (9th Cir. 2013).

### III.     Atrium's Request for Judgment in Its Favor.

Atrium seeks judgment in its favor. Doc. 210 at 14. It argues that based on the Ninth Circuit's reinterpretation of the License Agreement, Bard has failed to establish a "meeting of the minds" on an essential term of the License Agreement – that Atrium would pay minimum royalties on Atrium's Canadian sales after Bard's U.S. patent expired. *Id.* at 9-14. Atrium made this same argument in the parties' joint memorandum following remand from the Ninth Circuit. Doc. 203 at 8-10. The Court rejected the argument, explaining that the Ninth Circuit decided only the patent misuse question and did not interpret the License Agreement for other purposes. "The decision did not produce a radical reinterpretation of the License Agreement for purposes of Bard's breach of contract claim, as Atrium claims, and does not warrant reopening Atrium's case and allowing it to assert defenses never pled in its answer (*see* Doc. 80) and never asserted in this case[.]" Doc. 204 at 3.

Atrium has not shown that this conclusion by the Court constitutes manifest error, *see* LRCiv 7.2(g)(1), and mere disagreement with an order is an insufficient basis for reconsideration, *see McIntyre v. Ariz. Bd. of Regents*, No. CV-24-08151-PCT-DGC, 2025 WL 296399, at *1 (D. Ariz. Jan. 24, 2025). The Court will deny Atrium's request for judgment in its favor.

### IV.     Atrium's Request for Leave to Amend.

Atrium seeks leave to amend its pleadings to pursue an affirmative defense of unconscionability and a counterclaim for reformation of contract. Doc. 210 at 16-21. But this request also is premised on the view that the Ninth Circuit reinterpreted the parties' License Agreement for all purposes, including Bard's breach of contract claim. As in its

5

previous order, the Court concludes that the Ninth Circuit's published decision is simply an application of the patent misuse doctrine, not a general reinterpretation of the parties' contract.

Before the appeal to the Ninth Circuit, the Court construed the License Agreement under Delaware law (which the parties agreed controlled this case), specifically found the agreement ambiguous (Doc. 143 at 16-21), and considered relevant and admissible extrinsic evidence presented during the bench trial to determine the parties' actual intent (Doc. 189). The Ninth Circuit held that this was not the proper approach under the Supreme Court's patent misuse cases, specifically *Brulotte v. Thys Co.*, 379 U.S. 29 (1964), and *Kimble v. Marvel Enterprises LLC*, 576 U.S. 446 (2015). The Circuit held that a court should construe the contract purely as a matter of law: "[the District Court's] factual findings do not control our review . . . because the application of the *Brulotte* rule is a question of law that depends on the terms of the contract at issue." 112 F.4th at 1191. "The *Brulotte* inquiry does not turn on the parties' motivations, the course of their negotiations, or the consideration received by either party in exchange for the inclusion of a particular contract term." *Id.* The Court of Appeals therefore disregarded this Court's application of Delaware law, its express finding of ambiguity, and its consideration of extrinsic evidence presented by the parties, and instead looked "only at the terms of the agreement," asking whether those terms, without regard to the parties' motivations and intent, violated the patent misuse doctrine. *Id*. at 1191-92.

In short, the Court of Appeals held that "the application of the *Brulotte* rule is a question of law." *Id.* at 1191. In making this decision on the patent misuse doctrine, the Circuit did not purport to reinterpret the License Agreement for other purposes, such as Bard's breach of contract claim. Indeed, the same panel affirmed this Court's remaining interpretation of the contract in a separate opinion – an interpretation that relied on state-law principles – without stating that it was using *Brulotte*'s law-only approach. *See C. R. Bard, Inc. v. Atrium Med. Corp.*, No. 23-16020, 2024 WL 3916211 (9th Cir. Aug. 23, 2024); Doc. 143.

Because the License Agreement has not been reinterpreted for non-patent-misuse purposes, such as Bard's breach of contract claim, Atrium's request to amend its pleadings to address such a reinterpretation is not warranted.[4]

**V.      Judgments and the Parties' Claims.**

The Court will vacate the judgment entered in favor of Atrium (Doc. 189 at 19) in light of the Ninth Circuit's reversal of that judgment (Doc. 201-1 at 18). The Court will enter judgment in favor of Bard on its breach of contract claim based on Atrium's failure to make minimum royalty payments under the License Agreement. Doc. 53 ¶¶ 51-55 (Count I). The judgment in favor of Bard on Count I renders moot its claim for breach of the Settlement Agreement and its claims for declaratory judgment, specific performance, promissory estoppel, and quantum meruit. *Id.* ¶¶ 77-84, 94-111, 115-19 (Counts IV, VI-VIII, and XII). The Court denied Bard's request for leave to amend to assert claims for abuse of process and breach of the covenant of good faith and fair dealing. Doc. 35 at 9-12; Doc. 53 ¶¶ 113-15 (proposed Counts IX-XI). Bard has dismissed its breach of contract claims based on Atrium's filing for reexamination of the Canadian Patent. Doc. 53 ¶¶ 56-76, 85-93 (Counts II, III, and V); Doc. 152. The Court granted summary judgment in favor of Bard on Atrium's breach of contract, unjust enrichment, negligent misrepresentation, and fraudulent inducement counterclaims. Doc. 57 ¶¶ 89-124 (Claims 1-4); Doc. 143 at 20-21. No outstanding claims or defenses remain in the case.

---

[4] As in its February order, the Court acknowledges that the Ninth Circuit's approach creates an uncomfortable dichotomy – one interpretation of the contract for patent misuse purposes and a different interpretation for all other purposes. Doc. 204 at 3 n.2. The Court can reach no other conclusion. If the Court of Appeals intended to reverse the Court's contract interpretation for all purposes, surely it would have addressed Delaware law, the Court's express finding that the minimum royalty provisions are ambiguous, and the extrinsic evidence presented by the parties and used by the Court to resolve the ambiguity. It did none of this. However, if the Court of Appeals did not intend to create this dichotomy – if it intended to reinterpret the contract for all purposes – this Court respectfully asks that it say so on appeal of this order. That fact might well cause this Court to revisit Atrium's request to assert defenses and claims that became relevant only when the contract was reinterpreted to adopt a reading Bard never asserted in this Court.

**IT IS ORDERED:**

1. The judgment (Doc. 189 at 19) entered in favor of Defendant Atrium Medical Corporation on Plaintiff C. R. Bard, Inc.'s claims for breach of contract, declaratory judgment, specific performance, promissory estoppel, and quantum meruit (Counts I, IV, VI-VIII, and XII) is **vacated**.

2. **Judgment** is entered in favor of Plaintiff C. R. Bard, Inc. on its breach of contract claim under the License Agreement (Count I) in the total amount of **$65,819,332.00** ($53,117,258 in damages and $12,702,074 in prejudgment interest).

3. Pursuant to 28 U.S.C. § 1961, Plaintiff C. R. Bard, Inc. is entitled to post-judgment interest from the date of this judgment until the judgment is satisfied.

4. Plaintiff C. R. Bard, Inc.'s claims for breach of the Settlement Agreement, declaratory judgment, specific performance, promissory estoppel, and quantum meruit (Counts IV, VI-VIII, and XII) are **denied** as moot.

5. Defendant Atrium Medical Corporation's requests for judgment in its favor and for leave to amend its pleading (Doc. 210 at 9-14, 16-21) are **denied**.

6. The parties' motions to seal documents (Docs. 206, 209) are **granted**. The Clerk is directed to file under seal the documents lodged at Docs. 207 and 210, using the same document numbers.

Dated this 16th day of July, 2025.

David G. Campbell
Senior United States District Judge